**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| ABRAHAM GEORGE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:18-cv-02563-TWP-MJD |
| | ) | |
| INDIANA GAMING COMMISSION, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on a Motion for Summary Judgment filed pursuant to Federal Rule of Civil Procedure 56 by Defendant Indiana Gaming Commission ("IGC") (Filing No. 50). Plaintiff Abraham George ("George") initiated this action, asserting claims against IGC for employment discrimination based on national origin and color because of repeated failures to promote him and for retaliation. For the following reasons, the Court **grants in part and denies in part** IGC's Motion.

## I. BACKGROUND

As with any summary judgment motion, the facts are reviewed in the light most favorable to George, the nonmoving party, and the Court draws all reasonable inferences in George's favor. See *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009).

IGC is an agency of the State of Indiana with its headquarters in Indianapolis, Indiana. IGC is the state regulatory agency that oversees gaming in Indiana and currently employs over 200 people (Filing No. 13 at 2–3). George is an American citizen who originates from India, and he has dark colored skin. He was hired as a "Field Auditor II" by IGC on February 8, 1999. Prior to working for IGC, George worked for the Indiana Department of Transportation for roughly four

years as a Field Auditor III (Filing No. 52-1 at 3).  Despite his two decades of employment at IGC, George has never been promoted and he has not reached the maximum salary for his pay grade (Filing No. 13 at 3–5).  There are four employees at IGC who have been employed longer than George:  Frank Brady ("Brady"), Jennifer Reske ("Reske"), Kendra Nigg, and Tom Stuper.  All four of these employees are white and are Americans by birth.  *Id.* at 3.

Since the time IGC hired him in February 1999, George has worked in the same position as a Field Auditor II (Filing No. 52-1 at 2–3).  In the last few years, George has applied for seven different positions, and was denied each one. His work performance has been satisfactory for his position, and George received an overall rating of "meets expectations" in 2016, 2015, 2014, 2013, 2012, and 2011 (Filing No. 52-8; Filing No. 52-9; Filing No. 52-10; Filing No. 52-11; Filing No. 52-12; Filing No. 52-13).  In 2010, he received an overall rating of "needs improvement" as his employer noted problems with teamwork and acceptance of supervision.  His annual performance review stated that he "often attempts to put his perceived abilities first in an effort to promote advancement," and he "is sometimes resistant to supervision and during the past year has gone around his direct supervisors in an attempt to promote his desires for advancement." (Filing No. 52-14 at 2, 4.) George's 2009 performance review indicated that he "met expectations."  (Filing No. 52-1 at 52.) For his 2008 work performance review, George received an overall rating of "exceeds expectations."  (Filing No. 54-1 at 5.)  George's 2008 review noted that he "[w]orks well with the other auditors in the division and creates excellent team spirit.  Encourages others to go beyond what is expected of them." *Id.* at 3.

IGC's Audit Director, Brady, has been in that position since 1994, and he recommended that IGC hire George as a Field Auditor II in 1999.  Brady is one of George's supervisors (Filing No. 52-4 at 1).  Brady characterized George's work performance as "[s]atisfactory" and noted that

George is "fast with the numbers, but his accuracy has to be checked." (Filing No. 52-2 at 10–11.) Around 2016 or 2017, Brady recommended that George be awarded a "spot bonus" for a job well done on an audit adjustment. *Id.* at 10.

IGC's Deputy Director, Reske, has been in that position since 1994 (Filing No. 52-5 at 1). As the Audit Director, Brady directly reported to Reske in her position as the Deputy Director of IGC (Filing No. 52-2 at 11). Throughout the years, Brady and Reske discussed George's skill set and concluded that he "is adequate at [the] field auditor position. He lacks certain other skills, though, that would be necessary to have a position that would be considered a promotion." (Filing No. 52-3 at 2–3.) Reske also opined that George's "demeanor might not be effective in a position when he's dealing with outside parties. He's failed to develop good rapport with internal parties, and there are other issues that have come up." *Id.* at 3.

In 2010, George complained to Reske about not being promoted. He explained that he was still in the same job position, without a promotion and without being given a new position, despite his many years of experience at IGC (Filing No. 54-2 at 12–15; Filing No. 52-1 at 47–49). If an employee was not meeting job expectations, IGC had a process for coaching, which could include counseling, discussion, or a work improvement plan (Filing No. 54-2 at 28–29). Reske viewed George as a "bad communicator". (Filing No. 54-2 at 23, 29). George has never had the benefit of placement on a work improvement plan or for coaching. George's 2010 performance review indicated that he needed improvement because of issues with teamwork and acceptance of supervision. Brady wrote that "[Mr. George] often attempts to put his perceived abilities first in an effort to promote advancement," and that he "is sometimes resistant to supervision and during the past year has gone around his direct supervisors in an attempt to promote his desires for advancement." (Filing No. 52-14 at 2.) The performance review also noted that, "[d]uring a

conference with his supervisor and the Audit Director [Brady,] these issues were addressed. Since that time improvement has been noted." *Id*.

IGC offered leadership training to employees who were recommended by their supervisors. IGC directors would ask the supervisors to submit names of employees who should be invited to the leadership trainings. The only employee in the Audit Division to be recommended to attend leadership training was Caitlin Hannah ("Hannah"). Brady never recommended George for leadership training (Filing No. 54-2 at 18).

In April or May 2016, Ron McClain ("McClain") was promoted from the position of Field Auditor II to Field Auditor I/Assistant Audit Director. The person who previously held the position had retired, and McClain, who had law enforcement background, was promoted to fill the vacancy after a recommendation by Brady (Filing No. 51 at 4). The position was not opened up for applications, so George did not have an opportunity to apply for the position (Filing No. 52-1 at 6).

George applied for an Investigator position in February 2017, but the position was given to Manuel Becker ("Becker"). The Investigator position is in the enforcement section. Robert Townsend, the hiring manager for the position, recommended that Becker be hired for the Investigator position because he had a law enforcement background and already possessed the required law enforcement certification (Filing No. 52-7 at 1). George does not have a law enforcement background and also does not have the required law enforcement certification for the Investigator position (Filing No. 52-7 at 2; Filing No. 52-1 at 4, 61). George offered to get trained at the police academy, but he not was given the position (Filing No. 54-4 at 12–13).

George also applied for the Director of Compliance position in March 2017. This position was given to Angela Bunton ("Bunton"). As the hiring manager for this position, Reske

recommended that Bunton be promoted to this position because she had worked as the Assistant Director of Compliance for nine years and had compliance and managerial experience. Before the Compliance Division was created, the various other divisions at IGC (including the Audit Division) handled compliance issues. Prior to the Compliance Division's creation, George handled some compliance issues, but he never worked in the Compliance Division and had no managerial experience (Filing No. 52-5 at 1–2; Filing No. 54-2 at 9; Filing No. 52-1 at 14).

After Bunton left her position as the Assistant Director of Compliance to fill the role as the Director of Compliance, she recommended the promotion of Marecia Dewar ("Dewar") to the position of Assistant Director of Compliance. Bunton made this hiring recommendation over hiring George for the position. Bunton says she recommended Dewar for the promotion because Dewar had ten years of experience working in casino compliance as an IGC Gaming Agent. While he had some compliance experience, George had never worked in a compliance-focused position (Filing No. 52-6 at 1).

In July 2017, Dewar was transferred to a different position. Bunton then recommended the promotion of Kimberlyn Simpson ("Simpson") to fill the Assistant Director of Compliance position because of her extensive work with casino compliance departments as a Licensing Coordinator, her demonstrated leadership qualities, and her initiative developing a manual for users of IGC's occupational licensing program (Filing No. 52-6 at 1). Reske also stated Simpson had a great ability to communicate effectively with shareholders.

George again applied and interviewed for the position of the Assistant Director of Compliance; however, Bunton recommended Hannah to fill the position in April 2018 due to her exceptional interview performance (Filing No. 52-6 at 1). Hannah had been a Field Auditor II for two years. Bunton stated she recommended Hannah over George, because George failed to answer

a few questions in his interview, contradicted himself, and displayed an arrogant and entitled demeanor (Filing No. 52-6).

George filed a Complaint against IGC on August 20, 2018, and brought claims for discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, ("Title VII") (Filing No. 1). Abraham George satisfied his obligation to exhaust his administrative remedies in 2017 by having timely filed U.S. Equal Employment Opportunity Commission Charge Number 470-2017-02930 against IGC alleging discrimination in violation of the Civil Rights Act of 1964, as amended, because of his skin color, dark, and his national origin, India. *Id*. at 2, ¶ 6. He received his Notice of Right to Sue from the Equal Employment Opportunity Commission ("EEOC") on June 21, 2018. *Id*.

In December 2018, McClain was demoted from Field Auditor I after making a racial remark about Mexicans (Filing No. 54-3 at 6). The position opened up, and George applied. Brady recommended hiring Billy Quist ("Quist") as Field Auditor I, rather than George, because Quist had ten years of experience working in compliance and internal auditing within the casino industry (Filing No. 52-4). George does not have any experience working within the casino industry. George was not interviewed. (Filing No. 52-1 at 6). Quist also did not interview, yet he received the position. (Filing No. 53 at 5). On March 20, 2019, Brady gave a deposition and testified that he held the opinion that George was not qualified for any promotion (Filing No. 54-3 at 14).

IGC has moved for summary judgment. (Filing No. 50).

## II.    SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Federal Rule of Civil Procedure 56 provides that summary

judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted). "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted). Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox County Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted). "In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of [the] claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citations and quotation marks omitted). "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997).

Although the Court views the designated evidence in the light most favorable to George as the non-moving party and draws all reasonable inferences in his favor, "employment discrimination cases are extremely fact-intensive, and neither appellate courts nor district courts

are obliged in our adversary system to scour the record looking for factual disputes." *Bright v. CCA*, 2013 U.S. Dist. LEXIS 162264, at *8-9, (S.D. Ind. Nov. 14, 2013).

### III.   DISCUSSION

IGC argues it is entitled to summary judgment on both of George's claims because there is no evidence of discrimination or retaliation. IGC contends that in each hiring instance, it selected a different candidate and not George due to the other candidates' superior qualifications. The Court will first address George's Title VII claims of national origin discrimination, before turning to his retaliation claim.

### A.   Title VII National Origin Discrimination Claim

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).

An employee can establish a *prima facie* case of discrimination in a failure to promote context in one of two ways, either by "directly show[ing] that racial discrimination motivated the employment decision, or, as is more common, [by] rely[ing] on the indirect, burden-shifting method set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)." *Sublett v. John Wiley & Sons, Inc.*, 463 F.3d 731, 736–37 (7th Cir. 2006) (quotations and citations omitted). George has not offered any evidence of direct discrimination, and thus, he proceeds under the burden-shifting method.

To establish a *prima facie* case of race discrimination in a failure to promote context, the plaintiff must show: (1) he is a member of a protected group; (2) he was qualified for the position sought; (3) he was rejected for the position; and (4) the employee who was promoted was a member of a different race and was not better qualified than he.  *Id.* at 737 (citing *Johnson v. Nordstrom,*

*Inc.*, 260 F.3d 727, 732 (7th Cir. 2001)).  If the employee is able to clear that hurdle, then "the burden shifts to the [employer] to articulate a legitimate, nondiscriminatory reason for [its] action, 'which if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action.'"  *Id.* (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993) (citations omitted)).   If the employer articulates nondiscriminatory reasons for its actions, then the employee "resumes h[is] original burden of proof and must establish by a preponderance of the evidence that the [employer's] proffered reasons are pretextual."  *Id.* (quoting *Perdomo v. Browner*, 67 F.3d 140, 144 (7th Cir. 1995)).  The employee can show the proffered reason is pretextual by demonstrating that the reason (1) has no basis in fact, (2) did not actually motivate the adverse employment action, or (3) is insufficient to motivate the adverse employment action. *Gul-E-Rana Mirza v. The Neiman Marcus Group, Inc.*, 649 F. Supp. 2d 837, 849 (N.D. Ill. 2009). "Pretext involves more than just faulty reasoning or mistaken judgment on the part of the employer; it is a lie, specifically a phony reason for some action."  *Tibbs v. Admin. Office of the Ill. Courts*, 860 F.3d 502, 506 (7th Cir. 2017).

Regardless of whether a plaintiff uses the direct method, indirect method, or both methods, "the legal standard . . . is simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). "Evidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself—or whether just the 'direct' evidence does so, or the 'indirect' evidence. Evidence is evidence." *Id.* "Relevant evidence must be considered and irrelevant evidence disregarded, but no evidence should be treated differently from other evidence because it can be labeled 'direct' or 'indirect.'" *Id.* There is a single inquiry: it is "simply

whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race ... caused the discharge." *Id.* at 765. [1]

IGC argues it is entitled to summary judgment because George "cannot establish his *prima facie* case of discrimination in this case on the basis of his personal beliefs. . . ." (Filing No. 51 at 11.)  George satisfies the first three criterion; he is in a protected group, he was qualified for all the positions that he sought, and he was rejected. However, IGC contends that George fails on the fourth element because, in each instance, IGC promoted a better qualified candidate.  Relying on *McKinney v. Office of Sheriff Whitley County*, IGC states "[George's] discrimination further fails because a hiring or promotion decision on the relative qualifications of the candidates is a 'legitimate, nondiscriminatory reason' for IGC's personnel decisions."  866 F.3d 803, 807 (7th Cir. 2017) (quoting *McDonnell*, 411 U.S. at 802). IGC additionally contends George has "no evidence to support his subjective belief that national origin or race played a role in IGC's decisions." (Filing No. 51 at 10.)

In order to meet the fourth element of his prima facie case, George needs to show that he was as qualified as the promoted employees for the positions that which he'd applied for. See *Grayson v. City of Chicago*, 317 F.3d 745, 749 (7th Cir. 2003). George has a Master's degree in Accounting from the University of Bombay, India and a Bachelor of Commerce from the University of Kerala, India, and he has worked at IGC for over twenty years.  (Filing No. 53 at 3), (Filing No. 54-5)  He argues he was more educated and more experienced than the other applicants for these positions and the only difference was that he is Indian and speaks with an accent (Filing

---

[1] The decision in *Ortiz* did not alter "*McDonnell Douglas* or any other burden-shifting framework, no matter what it is called as a shorthand." *Id.* at 766.

No. 53 at 7).   George argues these circumstances show there are genuine issues of material fact that should preclude summary judgment.

Viewing the evidence in the light most favorable to George, the Court agrees that he possessed the qualifications for each position he sought.  But, as the Seventh Circuit has held:

> [W]here an employer's proffered non-discriminatory reason for its employment decision is that it selected the most qualified candidate, evidence of the applicants' competing qualifications does not constitute evidence of pretext unless those differences are so favorable to the plaintiff that there can be no dispute among reasonable persons of impartial judgment that the plaintiff was clearly better qualified for the position at issue.

*Mlynczak v. Bodman*, 442 F.3d 1050, 1059–60 (7th Cir. 2006). The Seventh Circuit has further stated:

> A plaintiff's contention that he is the better candidate for a vacancy constitutes nothing but the employee's own opinion as to his qualifications. This cannot create an issue of material fact because "[a]n employee's perception of his own performance . . . cannot tell a reasonable factfinder something about what the employer believed about the employee's abilities."

*Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1181 (7th Cir. 2002) (quoting *Olfsen v. Marshall & Ilsley Corp.*, 267 F.3d 597, 602 (7th Cir. 2001)).  Although George possessed the qualifications for each position that he applied for, it does not mean he was the better qualified candidate.  Other than the positions held by McClain and Quist, the other five positions George sought but ultimately did not obtain were outside George's current section of employment; four were in Compliance and one was in Investigation.  George's assertions that he was more qualified than the selected individuals for each position are unsupported and are contradicted by the evidence before the Court, and his personal beliefs are not enough to defeat a motion for summary judgment.

The evidence supports the Defendants assertions that the other candidates for each position were better qualified than George.  For the Field Auditor I position, Defendants contend McClain was better suited in April 2016 because he had a law enforcement background, which is what the

hiring manager was looking for.  Although George disputes the need for a law enforcement background since IGC has a separate investigation division, he acknowledges that the audit department is uniquely situated to identify illegal activity that may be revealed through the examination of financial records (Filing No. 52-1 at 10).  The evidence supports the Defendants contention that Quist, Brady's hire for the position in 2018, was better qualified for that position. Quist had ten years of experience working in compliance and internal auditing within the casino industry, bringing a unique and valuable perspective on casino operations that the hiring manager felt was very rare to find.

The evidence supports that Becker was more qualified for the Investigator position in 2017 because he had a law enforcement background and already possessed the law enforcement certification required for the position.  George acknowledged Becker's superior qualifications and specifically stated he would have selected Becker over himself for the position if he was the hiring manager (Filing No. 52-1 at 62).

Bunton was better qualified for the Director of Compliance position in 2017 because she had served as the Assistant Director of Compliance for nine years and had managerial experience. George again admitted he would have hired someone with her experience over someone with his (Filing No. 52-1 at 19).  As for the Assistant Director of Compliance position that had been vacated and then filled throughout the years, Dewar, Simpson, and Hannah each possessed some superior qualifications—Dewar had ten years of experience working in casino compliance, whereas George had never worked in a compliance-focused role; Simpson had extensive work with casino compliance departments, leadership qualities, and initiative; and Hannah had an exceptional interview performance while George did not.  Bunton explained George performed poorly at his interview, failed to answer questions, contradicted himself, and displayed an arrogant and entitled

demeanor (Filing No. 52-6 at 1).  The evidence shows that George was not the better candidate for the positions for which he applied, regardless of his national origin.  Because of this, George fails to satisfy the fourth element of his *prima facie* case of discrimination under Title VII.

Even if George succeeded in establishing a *prima facie* case of discrimination in a failure to promote context based on his national origin, IGC has articulated legitimate, non-discriminatory reasons for its action, supporting a finding that unlawful discrimination was not the cause of the employment action.  Thus, George would have to establish that IGC's proffered reasons are pretextual.  He has failed to satisfy this burden.  Each of the hiring managers deny being motivated by any kind of discriminatory animus (Filing No. 52-4; Filing No. 52-5; Filing No. 52-6; Filing No. 52-7), and George himself testified that no one at IGC ever displayed any kind of animus (*see* Filing No. 52-1).  George has offered no evidence to support a claim of pretext and, instead, asks the Court to infer pretext simply from the fact that he has not been promoted in twenty years.

George's assertion that he should have been promoted stems almost entirely from his twenty years of being with IGC.  In 2010, George complained to Reske about not being promoted. He complained that he was still in the same job position, without a promotion and without being given a new position, despite his many years of experience at IGC.  However, the Court finds nothing in the evidence to indicate that George's 2010 complaint about a lack of promotion concerned national origin or color.  In fact, the evidence shows George complained about the lack of promotion based solely on his many years at IGC, not based on his color or national origin (Filing No. 54-2 at 12–15; Filing No. 52-1 at 47–49).  In his deposition, George again repeated the reason he believed he is owed a promotion is because he has been in his position as Field Auditor II for twenty years (Filing No. 52-1 at 21).  IGC asserts, "the Court should reject Mr. George's invitation to find discrimination simply because Mr. George believes he is entitled to a promotion

after 20 years, despite the lack of any discriminatory animus on the part of any IGC employee."

([Filing No. 51 at 10](#).)

George has not provided evidence of bias based on his national origin by anyone at IGC. He bases his allegations of discrimination on the fact that he has been in the same position for twenty years and doing a good job. Unfortunately for George, this is not enough. *See Rand v. CF indus., Inc.*, 42 F.3d 1139, 1146 (7th Cir. 1994) ("Inferences and opinions must be grounded on more than flights of fancy, speculations, hunches, intuitions, or rumors, and [d]iscrimination law would be unmanageable if disgruntled employees . . . could defeat summary judgment by affidavits speculating about the defendant's motives."). George himself indicated that his allegations of being discriminated against on the basis of his national origin were "assumptions." ([Filing No. 52-1 at 11](#)–12) (answering the question, "Has [Brady] ever done anything that would lead you to believe that he thinks that Indians are less competent than other people" with ". . . Twenty years being at that job . . . What assumption should I make?"). George believes being a Field Auditor II with IGC for twenty years entitles him to a promotion, regardless if he is the most qualified for a position or is within the same section of the IGC, and his failure to get a promotion is due to discrimination based on national origin. "[I]nferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey*, 507 F.3d at 627. The Defendants have presented legally sufficient reasons for their promotion decisions that George has not shown to be pretextual.

George has failed to satisfy the elements of showing discrimination in a failure to promote context. Specifically, he has not satisfied the fourth element, which requires that "the employee who was promoted was a member of a different race and was not better qualified than he." IGC has identified specific qualifications that separated each selected candidate that made him or her

14

better qualified for the positions George sought. George himself acknowledged that whoever made the decisions to hire each of these candidates for the positions did so because they were a better candidate (Filing No. 52-1 at 7–8) (When asked "[i]s it possible that whoever made the decisions for each of these positions thought that the person that they hired was a better candidate?" George responded with "[t]hat's why they did it." When asked, "[d]o you think it's possible that they thought that the person that they hired for those positions was better qualified than you?" George responded, "[y]eah, that's why they did it. Otherwise they wouldn't do it."). Because IGC offered legitimate, non-discriminatory reasons for selecting other candidates to fill positions sought by George, and George failed to show that the reasons were pretextual, George's Title VII discrimination claim must be dismissed. Therefore, the Court **grants** summary judgment in favor of IGC on George's discrimination claim.

**B.**     **Title VII Retaliation Claim**

To establish a *prima facie* case of retaliation under Title VII, a plaintiff must provide evidence that "(1) he engaged in a statutorily protected activity; (2) he suffered a materially adverse action; and (3) a causal connection exists between the two." *Harper v. C.R. Eng., Inc.*, 687 F.3d 297, 306 (7th Cir. 2012). After the plaintiff establishes a *prima facie* case, the burden of production shifts to the defendant employer to come forward with a legitimate, non-retaliatory reason for its actions. *Griffin v. Board of Regents of Regency Univ.*, 795 F.2d 1281, 1294 (7th Cir.1986). If the defendant rebuts the plaintiff's *prima facie* case in this manner, the plaintiff then has a chance to show that the defendant's proffered reasons are pretextual. *Id.*

"Title VII protects an employee from retaliation for complaining about the types of discrimination it prohibits." *Hamm v. Weyauwega Milk Prods.*, 332 F.3d 1058, 1066 (7th Cir. 2003) (citation and quotation marks omitted). Thus, to support the first element of a retaliation

claim, the plaintiff must establish that "the complained-of conduct entailed a motive that Title VII prohibits." *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 563 (7th Cir. 2016). To constitute statutorily protected activity, an employee's complaint to their employer "must indicate the discrimination occurred because of sex, race, national origin, or some other protected class. Merely complaining in general terms of discrimination or harassment, without indicating a connection to a protected class or providing facts sufficient to create that inference, is insufficient." *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006) (internal citation omitted). Furthermore, "[a]n employer must have actual knowledge of the employee's protected activity to state a claim for retaliation." *Id.* at 658; *Luckie v. Ameritech Corp.*, 389 F.3d 708, 715 (7th Cir. 2004). The ultimate question the parties and the court always must answer is whether it is more likely than not that the plaintiff was subjected to the adverse employment action because of his protected status or activity." *Hobgood v. Ill. Gaming Bd.*, 731 F.3d 635, 644 (7th Cir. 2013).

George is the only Indian male that has ever worked for IGC and he speaks with an accent. The parties do not dispute that George engaged in statutorily protected activity when he filed his Charge of Discrimination based on his race and national origin. However, the parties dispute whether George has suffered any adverse action as a result of filing the Charge of Discrimination and dispute a causal connection.

An adverse action must be "more than a 'mere inconvenience or an alteration of job responsibilities.'" *Oest v. Ill. Dep't of Corr.*, 240 F.3d 605, 613 (7th Cir. 2001) (quoting *Crady v. Liberty Nat'l Bank & Trust Co.*, 933 F.2d 132, 136 (7th Cir. 1993)). It must instead be something in the order of "a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [or] significantly diminished material responsibilities." *Id.* A substantial change to an employee's responsibilities is only materially

adverse if it represents a significant alteration to the employee's duties, which is often reflected by a corresponding change in work hours, compensation, or career prospects. *Stephens v. Erickson*, 569 F.3d 779, 790-791 (7th Cir. 2009). Failure to promote can be an adverse action giving rise to liability. *See Jackson v. County of Racine,* 474 F.3d 493, 501 (7th Cir.2007).

George asserts he has been treated differently by Brady since filing his Charge of Discrimination with the EEOC. He asserts, "a lot of things [he] used to do before have been kept away from [him]" and that he "used to get dozens of emails from Brady" to do things, but as soon as he filed his Charge, that stopped. (Filing No. 52-1 at 27.) He explains that he used to be asked his opinion on multiple things, which also stopped once the Charge was filed. George was denied an opportunity to attend a leadership training program, and Brady threatened to fire him and accused him of being an informant for the State Board of Accounts over a reporting issue involving the State Board. In addition, Brady now requires him to check in when he arrives at and leaves from work, and Brady asked him to train other auditors on "month-end report kind of stuff." (Filing No. 52-1 at 27, 34, 39–43, 45–46.) When he complained to Reske about how Brady was "holding him back," George was disciplined. (Filing No. 53 at 11.)

Lastly, George argues that Brady has a history of advocating for those who discriminate against other national origins. George's assertion is based on the fact that Brady supported McClain after McClain made racist remarks about Mexicans, which he argues infers a causal link between George's protected activity and the adverse treatment that he is receiving.

IGC asserts Brady has not treated George differently as a result of the EEOC Charge of Discrimination nor has he taken any adverse employment action against George. (Filing No. 51 at 16.) IGC focuses on the second element of the retaliation claim, arguing that none of the allegedly retaliatory acts identified by George are materially adverse and, thus, George fails to

17

support a *prima facie* case for retaliation.  Additionally, IGC states George's retaliation theory is "no longer based on any particularized act, but a general grievance that Mr. Brady's alleged hostility toward him will prevent him from ever advancing his career at the IGC." (Filing No. 57 at 9.)

Relying on *Stephens*, George argues that, "[c]learly, [Brady] is adversely affecting [his] career prospects and opportunities to advance." *Stephens* at 791.  He points out that Brady has testified there is no promotion within the agency that George is qualified for, effectively precluding him from ever being promoted. (Filing No. 54-3 at 14.)  He contends that Brady has demonstrated that he will not recommend George for any training that might advance his career, such as recommending him for leadership training, also precluding any opportunity to advance within the agency. (Filing No. 54-3 at 14.)  In addition, Brady has testified that George is not qualified for *any* promotion at IGA because of his "meet and deal" which includes "his reactions after he's not selected for a position". *Id*. at 15.

The Court acknowledges George's contention that the discipline he received for a confrontation with Reske was retaliatory; however, this cannot support his retaliation claim as that incident occurred in 2010, many years before George filed his EEOC Charge and this lawsuit.

George's assertion that Brady is "bridling" his career is more compelling.  Brady testified that he did not become aware of George's EEOC Charge of Discrimination until after it was dismissed, George had received his right-to-sue letter, and George had initiated this lawsuit that was filed in August 2018. (Filing No. 52-2 at 8–9.)  It is undisputed that Brady did not play a role in any promotion or hiring decisions relating to George other than the Field Auditor I position in 2016 (McClain was hired) and in January 2019 (Quist was hired) (*see* Filing No. 52-4).  Thus, the

Court must consider whether George has presented evidence that Brady has inhibited George's career prospects at the IGC, after August 2018.

The Court determines that George has presented evidence that he suffered an adverse employment action resulting from the protected activity of filing his EEOC charge and this lawsuit. Considering the evidence in the light most favorable to George, he has shown that he has decades of experience in casino auditing, as well as experience performing tasks required of the position such as training other employees to perform tasks necessary for the auditor role. (Filing No. 54-4 at 9, 11.) George's educational background is also grounded in accounting, ultimately obtaining the equivalent of his Master's degree in accounting. (Filing No. 54-5.) As noted above, the designated evidence shows that while George may not have been the better qualified, he was certainly qualified for all the positions that he sought. He has invested 20 years of his career at IGC. The Court agrees with George and determines that he has identified a materially adverse action by IGC if he is now being foreclosed from *any* promotion by his supervisor, his career prospects are adversely affected.

George must next show a causal connection between his protected activity and IGC's adverse action. In order to demonstrate a causal link, the plaintiff must demonstrate that the employer would not have taken the adverse action but for the protected activity. *Klein v. Trustees of Indiana Univ.*, 766 F.2d 275, 280 (7th Cir. 1985). After George filed his EEOC charge and this lawsuit, he applied for the Field Audit I position in December 2018, but received a letter from Brady dated January 11, 2019 stating that he was not granted an interview. (Filing No. 54-11.) Specifically, Brady wrote that George had not been selected for an interview because "[a]n interview is unnecessary as I am familiar with your skill set through extensive interaction and observation as your Division Director." *Id*. at 2. George contends this reason is pretext, and that

He argues Brady's defense of McClain, a fellow retired law enforcement officer, infers a causal link between George's protected expression and the adverse treatment he is receiving, such that a jury could conclude that national origin is, in fact, the reason that Brady is bridling George's career.

The Court is not persuaded by George's argument. Instead, the Court notes that on the six prior occasions when George had applied for promotion—all before he formally complained about discrimination—George was at least granted an interview and an opportunity to be considered for the position. A reasonable trier of fact could conclude that Brady's statement that George's "reactions after he's not selected for a position"—which included George filing the EEOC charge and lawsuit—are a reason why George did not receive an interview or opportunity for consideration for the December 2018 Field Auditor I position, despite the fact that George held the position of Field Auditor II for 20 years. The Court finds this evidence presents is a causal link to George's retaliation claim. George has offered sufficient evidence that his significantly diminished material responsibilities and failure to be promoted were at least in part, based on his formal complaints of discrimination. Because there is a factual dispute on this issue, it should be resolved by the trier of fact. Accordingly, summary judgment is **denied** with respect to George's retaliation claim

### IV.    CONCLUSION

Because IGC has offered legitimate, non-discriminatory reasons for selecting individuals other than George for the positions he sought, the Court concludes there are no genuine issues of material fact to preclude summary judgment regarding the discrimination claim. In construing the record in George's favor, as the Court must do, the designated evidence and the factual disputes between the parties preclude entry of summary judgment on George's retaliation claim, and the

retaliation claim survives summary judgment.  Thus, the Defendant Indiana Gaming Commission's

Motion for Summary Judgment, (Filing No. 50), is **GRANTED in part and DENIED in part**.

> This matter is scheduled for final pretrial conference on June 2, 2021 at 11:00 a.m. in Room

330 and trial by jury on June 28, 2021 at 9:00 a.m. in Courtroom 344, Birch Bayh Federal Building

and U.S. Courthouse, Indianapolis, Indiana.

> **SO ORDERED.**

Date:  9/24/2020

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Christopher E. Clark
GOODIN ABERNATHY LLP
cclark@goodinabernathy.com

Benjamin C. Ellis
INDIANA ATTORNEY GENERAL'S OFFICE
Benjamin.Ellis@atg.in.gov

Joshua Robert Lowry
INDIANA ATTORNEY GENERAL'S OFFICE
joshua.lowry@atg.in.gov